## ASSET PURCHASE AGREEMENT
### (DM RECORDS, INC.)

This Asset Purchase Agreement (the "Agreement") dated as of _June 14_____, 2001, is entered into by and between Leon S. Jones, in his capacity as the duly appointed and acting Chapter 7 bankruptcy trustee for the consolidated estate of Ichiban Records, Inc., Ichiban International Corporation, Ichiban Publishing Corporation Case No. 00-75793, Ichiban Distribution, Inc. Case No. 00-75794, and Sky Records, Inc. Case No. 00-75795 (the "Seller"), and DM Records, Inc. (the "Buyer"). In consideration of the promises and mutual covenants and agreements contained in this Agreement, the Seller and the Buyer, intending to be legally bound, agree as follows:

## SECTION 1. DEFINITIONS AND CONSTRUCTION

1.1     **Definitions**. The following definitions shall apply throughout this Agreement:

"Approval Date" means the date the Bankruptcy Court enters an Order approving the Seller's motion to approve the sale on the terms set forth in this Agreement (the "Motion").

"Bankruptcy Case" means the consolidated bankruptcy case captioned In re: Ichiban Records, Inc. Case No. 99-66017, Ichiban International Corporation Case No. 99-70825, Ichiban Publishing Corporation Case No. 00-75793, Ichiban Distribution, Inc. Case No. 00-75794, and Sky Records, Inc. Case No. 00-75795. On April 27, 1999, Ichiban Records, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On July 26, 1999, Ichiban International Corporation filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 10, 2000, the United States Bankruptcy Court for the Northern District of Georgia entered an order consolidating the aforementioned Chapter 11 cases. On March 28, 2000, the consolidated Chapter 11 case was converted to Chapter 7.

"Bankruptcy Code" means Title 11 of the United States Code.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "Bankruptcy Court") in which the Bankruptcy Case is pending.

"Closing" means, upon satisfaction of all conditions to Closing, the sale and purchase contemplated in this Agreement on or before the end of business on the tenth (10th) day following the Approval Date. The date and event of that sale and purchase are together referred to as the "Closing Date." The closing shall take place at the offices of the Seller or at such other place as may be mutually agreeable to each of the parties



EXHIBIT
_A_____

1

Copyright Litigation
RYKO 0830
Confidential
Highly Sensitive

"Company" means Ichiban Records, Inc., Ichiban International Corporation, Ichiban Publishing Corporation, Ichiban Distribution, Inc., and Sky Records, Inc. (sometimes referred to as Seller).

"Earnest Money" means ████████ in cashier's checks or wire transfer funds deposited in escrow and to be applied as the payment of the Purchase Price at Closing. In the event of a default by Seller, said earnest money shall be returned to Buyer at Buyer's sole discretion. Said earnest money shall be deposited in an escrow account at Hall, Booth, Smith & Slover, P.C. with sufficient proof of deposit to Trustee following execution of this Agreement and filing of Seller's Motion and prior to submission to the Court for approval.

"Estate" means the bankruptcy estate of the Company created upon the commencement of the Bankruptcy Cases pursuant to Section 541 of the Bankruptcy Code which includes, without limitation, all of the Company's assets, rights and properties (sometimes referred to as Seller).

"Parties" means Seller and Buyer, collectively.

"Property" means all property of the Company, wherever located, including without limitation all producer/artist agreements owned or controlled by the Company, any publishing rights and all license agreements between the Company and/or the Estate and any and all licensees, and all copyrights, trademarks, service marks, royalties, receivables and revenues associated or in connection therewith, and all distribution, mechanical license, synchronization, and master purchase agreements, but specifically excludes the Excluded Assets defined in Paragraph 2.2 below.

"Purchase Price" means the sum of ████████ which Buyer shall pay to the Seller at the Closing. The Earnest Money shall be credited towards the payment of the Purchase Price.

"Trustee" means Leon S. Jones, the Chapter 7 Trustee of the Company's Estate, the sole representative of the Company's Estate pursuant to Section 323 of the Bankruptcy Code.

"Encumbrances" means mortgages, liens, encumbrances, security interests, claims, charges, or other legal or equitable encumbrances and any other matters affecting title except for claims of third parties under the Assumed Executory Contracts as defined herein.

## SECTION 2. PURCHASE OF ASSETS

2.1    **Purchase of Assets.** Pursuant to the terms of this Agreement and particularly Paragraph 2.2, Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller all of the Estate's rights, title and interests in and to the Property, including, without limitation the following items:

2

Copyright Litigation
RYKO 0831
Confidential
Highly Sensitive

(a)  All worldwide rights to the masters, two-inch and one-quarter inch reels, all DAT's, audio rights (compact discs, cassettes, DVD's, DVD/audio, DVD/ video) in any or all media whether existing now or in the future, production masters, video masters, film, artwork, color separations, matchprints, pictures, signs, etc. owned or controlled by the Estate of the Company whether now existing or arising in the future;

(b)  All worldwide copyrights and/or publishing interests and/or trademarks/service marks owned, possessed, or controlled by the Estate of the Company whether now existing or arising in the future, including but not limited to, Copyright Registration numbers SR 74-193, SR 76-575, SR 141-691, SR 74-194, SR 139-740, SR 123-150 and SR 68-698;

(c)  An irrevocable license worldwide in perpetuity to use of the likeness of the Company's artists/producers, their name and the name Ichiban Records and affiliated label names and logos whether now existing or arising in the future;

(d)  Assignment of all receivables and future payments from all contract receivables on property and copyrights being sold and logos whether now existing or arising in the future; and

(e)  All real property interests, general intangibles, causes of action and choses of action (other than those expressly identified below as Excluded Assets), including, without limitation, any and all claims or interests with respect to a recording studio operated by or on behalf of Kala and/or located at Unit D, 2310 Marietta Boulevard, Atlanta, Georgia;

(f)  All books and records including but not limited to any and all invoices, accounting statements, banking records, royalty statements, accounts receivable, statements and ledgers; contracts (respecting exclusive artist agreements, distribution agreements and licensing agreements or otherwise) in the possession of or under the control of the Trustee associated with any of the Property.

(g)  Seven (7) copies of each tape, recording, compact disc and any similar form of medium manufactured as inventory for resale in possession of Platinum Entertainment (the "Copies") which copies shall not be subject to the provisions of paragraph 2.5(e) below.

Attached hereto and incorporated herein by this reference is Schedule 2.1. Such Schedule 2.1 reflects the assets in possession of, or known to exist by, the Seller, any rights to which are being transferred pursuant to this Agreement. Seller makes no representation that the Debtor's assets are in any manner limited to that which is set forth on Schedule 2.1 and transfers to Buyer pursuant to this Agreement any and all assets of the Debtor wherever located free and clear of any liens, claims and encumbrances, except as set forth herein. However, such transfer

3

Copyright Litigation
RYKO 0832
Confidential
Highly Sensitive

by the Seller is subject to the provisions of Sections 2.4 and 3.1 with respect to the Seller's Representations.

2.2    **Excluded Assets.**  Buyer acknowledges that it is not (1) acquiring any cash, royalties or receivables collected through the Approval Date, or that may be collected by the Estate through the Closing Date, (2) avoidance claims of the Trustee including any under Bankruptcy Code § 541, 547, and 548, (3) deposit accounts maintained by the Trustee, (4) any claims of the Trustee against former officers, directors, and shareholders of the Debtors, (5) claims of the Debtors or the Trustee against Platinum Entertainment, Inc., (6) any claims of the Trustee or the Estate against Crystal Roney a/k/a Popcorn Multimedia Group, and (8) any rights to distribute or collect proceeds from the sale of the Noel Coward C.D. from Platinum Entertainment, Inc. or any other party.

2.3    **Payment of Purchase Price.**  Upon execution of this Agreement, Buyer shall deliver the Earnest Money to escrow.  Buyer shall deliver to Seller the total of the Purchase Price at Closing.  The Purchase Price shall be allocated as follows: Forty Percent (40%) of the Purchase Price shall be allocated to the Property of Ichiban International Corporation and Sixty Percent (60%) shall be allocated to the Property of Ichiban Records, Inc. and its other affiliated divisional labels.

2.4    **Due Diligence.**    The Parties agree that the Seller makes no representation as to the Property, or any related matter, except as otherwise set forth in this Agreement, the Motion or the Consent Order. The Property is transferred "AS IS/WHERE IS" without representation of any kind, such as any warranty of fitness for a particular purpose. Buyer acknowledges that prior to execution of this Agreement, it has had a substantial opportunity, which is adequate for purposes of this Agreement, to investigate the Company, the Property and all related matters.

2.5    **Conditions to Closing.**    The Parties agree and understand that the following conditions shall be satisfied prior to closing:

(a)    The entry of an Order by the Bankruptcy Court approving this Agreement without amendment or revision and authorizing Seller to sell the Property to Buyer free and clear of liens, claims and encumbrances pursuant to Section 363 of the Bankruptcy Code except as defined herein; and

(b)    Seller is authorized to sell the Property to buyer, it being expressly recognized and acknowledged that Seller may be required to accept higher qualifying bids for the purchase of the Property.  No bids will be accepted from persons or entities as defined by 11 U.S.C. § 101 (31).  To be qualifying, a bid must be accompanied by payment of ██████████ into escrow with sufficient proof of deposit to trustee.  No credit bids will be accepted.

(c)    Deposit of the Earnest Money into an escrow account at Hall, Booth, Smith & Slover P.C. with sufficient proof of deposit to Trustee following

4

Copyright Litigation
RYKO 0833
Confidential
Highly Sensitive

execution of this Agreement and filing of Seller's Motion and prior to final submission to the Court for approval.

(d)  Seller agrees to (i) execute and deliver this Agreement to Buyer; (ii) assign any or all registered and/or perfected proprietary rights to Buyer; (iii) assign all contracts; (iv) issue letters to account holders confirming said assignment; and (v) sign any other documents, instruments, and/or written instructions necessary for the consummation of the transaction.

(e)  Except as provided in paragraph 2.1(g) above, Seller further agrees to obtain Court approval for destruction of any and all existing inventory of finished goods or otherwise, wherever located, including but not limited to any and all inventory held by Platinum Entertainment.

2.6  **Delivery of Documents**.  Seller agrees to execute and deliver, as well as cause to be notarized, where and if applicable and/or appropriate any and all instruments, writings and documents which are presented by Buyer and which may be reasonably required to effectuate the sale of the Property, including, without limitation, any and all right, title and interest to copyrights, publishing, trademarks, royalties and receivables, free and clear of any and all liens, claims, encumbrances of any kind except as defined herein.  Seller further agrees to execute and deliver, as well as cause to be notarized, where and if applicable and/or appropriate, all such instruments, writings and/or documents that reaffirm the assignment of rights in the name of the Buyer.

Without limitation of the foregoing, the Seller agrees to execute and deliver an "Assignment" in a form substantially similar to that which is attached hereto, labeled as "Exhibit 2.6(A)" and incorporated herein by this reference.  Without limitation of the foregoing, the Seller agrees to forward to all account holders or payees a letter confirming the Seller's assignment, and such letter shall be in a form substantially similar to that which is attached hereto labeled as "Exhibit 2.6(B)" and incorporated herein by this reference.

This Paragraph 2.6 shall survive the "Closing" of this transaction, such that there shall be no merger by reason of the consummation of the Closing, and this covenant remains in full force and effect.

2.7  **Time of the Essence**.  Time and performance are expressly made of the essence. Seller covenants, agrees to, and shall not in any manner or fashion neither unreasonably delay nor withhold such additional documents, instruments and/or writings as provided, intended, and/or set forth in Paragraph 2.6.

2.8  **Bankruptcy Court Approval**.  Buyer and Seller acknowledge that the sale contemplated in this Agreement is subject to the approval of the Bankruptcy Court and the entry of an Order.  Should the Bankruptcy Court not enter an order and approve this Agreement without amendment or revision, then the Trustee shall immediately return the Earnest Money to Buyer.

5

Copyright Litigation
RYKO 0834
Confidential
Highly Sensitive

## SECTION 3. REPRESENTATIONS AND WARRANTIES

3.1   **Seller's Representations.**   Seller represents and warrants that (a) he is the Trustee, (b) as Trustee he is the sole representative of the Estate pursuant to Section 323 of the Bankruptcy Code, (c) has the authority to seek Bankruptcy court approval for the sale of the Property to Buyer, and (d) Seller will, subject to the order of the Bankruptcy Court and except as defined herein, transfer to the Buyer good, marketable and indefeasible title to all of the Property, free and clear of any security interests, liens, claims or encumbrances whatsoever.

3.2   **Buyer's Representation.**   Buyer represents and warrants that (a) the purchaser has sufficient funds available to consummate this Agreement in accordance with its terms and otherwise has the wherewithal to satisfy its post-Closing obligations hereunder, and (b) prior to the date hereof, the Buyer has made and conducted a reasonable investigation of the Seller.  The Buyer is entering into this transaction based on such investigation and, except for the specific representations and warranties made by the Seller written in this Agreement, buyer is not relying  upon any representation or warranty of the Seller.

## SECTION 4. OTHER COVENANTS AND AGREEMENTS

4.1   **Covenants and Agreements of the Seller.**  Following the Closing, the Seller shall from time to time execute and deliver such additional instruments, documents, conveyances or assurances and take such other actions as shall be necessary, or otherwise reasonably requested by the Buyer, to confirm and assure the rights and obligations provided for in this Agreement and the other Seller Documents and render effective the consummation of the transaction contemplated hereby.

4.2   **Covenants and Agreements of the Purchaser.**  For a period of eighteen (18) months following the Closing Date, the Buyer will (and will cause each of its Affiliates and its Affiliates' respective accountants, counsel, consultants, employees and agents to) give the Seller reasonable access during normal business hours to documents, records, work papers and information with respect to the Seller's properties, assets, books, contracts, commitments, reports, and records relating to the Seller's business purpose(including, for example, the preparation of Seller's tax returns), as the Seller from time to time may reasonably request.  In addition, Buyer shall permit the Seller to make copies at its own expense of any of the above information, records, or documents.

## SECTION 5. ASSUMPTION AND ASSIGNMENT

5.1   **Assumption and Assignment.**   The Seller shall seek an order from the Bankruptcy Court authorizing the Seller to assume and assign to Buyer certain executory contracts as reflected on Exhibit A (the "Addendum") which is attached

Copyright Litigation
RYKO 0835
Confidential
Highly Sensitive

hereto and incorporated herein by this reference (the "Executory Contracts") through the following procedures:

(a)     Within sixty (60) days after the Approval Date, Buyer shall identify which Executory Contracts and leases on the Addendum it wishes the Seller to assume and assign to it(the "Assumed Contracts").  Any cure amount listed as "unknown" on the Addendum shall be deemed as $0.00 for purposes of Seller's assumption and assignment to Buyer hereunder.

(b)     In addition to the Purchase Price, the Buyer shall pay to any applicable third parties, pursuant to Section 365(b)(1) of the Bankruptcy Code, the amounts required for assuming the Assumed Contracts as set forth on the Addendum and pursuant to paragraph 5(a) above and the Seller shall not be obligated to pay any such cure amounts.

(c)     The Seller shall request that the only adequate assurance of future performance required under Section 365(f)(2) of the Bankruptcy Code is the Buyer's promise to perform its obligations under the Assumed Contracts.

(d)     Any failure by Seller to obtain Bankruptcy Court approval of the assumption and assignment of any of the Executory Contracts shall not constitute a breach by Seller of this Agreement.

## SECTION 6.  EVENTS OF DEFAULT AND REMEDIES

6.1     **Buyer's Default.**  An event of default shall be deemed to have occurred by Buyer in the event Buyer fails to pay the Purchase Price or the Earnest Money or fails to proceed with the transaction contemplated in this Agreement following approval by the Bankruptcy Court as defined in paragraph 2.8.

6.2     **Seller's Default.**  An event of default shall be deemed to have occurred by Seller in the event Seller fails to proceed with the transaction contemplated in this Agreement following approval by the Bankruptcy Court as defined in paragraph 2.8.

## SECTION 7.  NOTICES

7.1     **Notices.**  Any notice, request, instruction, or other documents to be given under this Agreement to any party shall be in writing and delivered personally or sent by Registered Mail, Federal Express, or Certified United States Mail, postage prepaid, as follows:

If to Buyer:          DM Records, Inc.
                      Attention: Mark Watson
                      1791 Blount Road, Suite 712
                      Pompano Beach, FL 33069

Copyright Litigation
RYKO 0836
Confidential
Highly Sensitive

(954) 969-1623     Telephone
(954) 969-1997     Facsimile

If to Seller:     Leon S. Jones, as Trustee for
Ichiban Records, Inc., and
Ichiban International Corporation
**JONES & WALDEN**
83 Walton Street
Atlanta, Georgia 30303

(404) 954-6605     Telephone
(404) 954-6688     Facsimile

7.2    **Notice of Name or Address Change.** The Parties mutually agree to notify the other in writing fourteen (14) days prior to any change in the address to which any and all notices, instructions and requests are required to be delivered under this Agreement.

## SECTION 8. MISCELLANEOUS

8.1    **Costs.** Whether or not the transactions contemplated by this Agreement are consummated, each party shall bear its own costs and expenses incurred in connection with this Agreement.

8.2    **Binding Effect.** Seller and Buyer hereby warrant, represent and agree that this Agreement shall be binding and inure to the benefit of the parties and their respective successors and assigns. Seller and Buyer further warrant, represent and acknowledge that (a) they have consulted with legal counsel in connection with this Agreement, (b) they have carefully read and understand the provisions of this Agreement, (c) they willingly and with knowledge entered into this Agreement, and (d) the agreements contained herein are the product of an arms-length negotiation and that this Agreement is not subject to fraud, duress or overreaching.

8.3    **Governing Law and Venue.** This Agreement shall be governed and construed in accordance with the laws of the State of Georgia. Any dispute or controversy in connection with the performance or terms of this Agreement, including enforcement of the remedies provided herein in the event of a default, shall be brought in the Bankruptcy Court which shall have exclusive jurisdiction to resolve any such dispute or controversy.

8.4    **Entire Agreement.** This Agreement together with any Schedules attached hereto constitutes the full and complete agreement between Seller and Buyer with respect to the transactions contemplated herein and may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements of the

8

Copyright Litigation
RYKO 0837
Confidential
Highly Sensitive

parties. There are no other written oral agreements or representations between the parties.

8.5 **Amendments.** No modification or amendment or supplement to this Agreement shall be valid or effective unless such modification, amendment or supplement is evidenced by a written instrument and executed by each of the parties hereto.

8.6 **Captions.** The captions to this Agreement are for convenience only and shall not define or limit any provision contained herein.

8.7 **Jointly Drafted.** This Agreement has been reviewed by Counsel for Seller and Buyer and has been approved as to form and content. Thus, this Agreement shall be deemed to have been jointly drafted by the Parties for the purpose of applying any rule of construction to the effect that ambiguities are to be construed against the draftsman.

8.8 **Additional Documents.** Both Seller and Buyer agree to execute such additional documents as may be reasonably necessary to effectuate the terms of this Agreement.

8.9 **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original and all of which shall constitute one and the same instrument.

8.10 **Bankruptcy Court Approval.** Approval of this Agreement by the Bankruptcy Court as defined in paragraph 2.8 and the entry of an Order reflecting same is a condition precedent to this Agreement.

8.11 **Negotiations.** Negotiations relating to this Agreement and the transactions contemplated hereby have been carried on without the participation of any person acting on behalf of the Seller or Buyer in such manner as to give rise to any valid claim against the parties or the Assets for any brokerage or finder's commission, fee, or similar compensation.

8.12 **Reservation of Rights.** The execution of this Agreement does not constitute any release of the Seller's claims against Crystal Roney d/b/a Popcorn Multimedia Communications Group ("Popcorn"), and the Seller further reserves any and all rights to litigate or otherwise pursue and collect the Seller's claims against Popcorn. The execution of this Agreement does not constitute any merger, release or settlement in any form by and between the Seller and Popcorn and the Seller's rights pursuant to the Asset Purchase Agreement entered into by and between the Seller and Popcorn survive the execution of this Agreement. This Agreement is entered into based upon the breach of Popcorn and Popcorn's failure to close the above-referenced transaction pursuant to the terms of the Asset Purchase Agreement and the Court Orders of the United States Bankruptcy Court for the Northern District of Georgia. It is understood by the Seller and the Buyer that both parties agree to the terms of this Agreement and that the Seller in

9

Copyright Litigation
RYKO 0838
Confidential
Highly Sensitive

executing this Agreement is seeking to mitigate the damages caused by Popcorn's failure to close.

Seller covenants, agrees to, and shall indemnify, defend, protect, and hold Buyer harmless from and against any and all claims and obligations (including, without limitation, damages, losses, injuries, costs and expenses – including attorneys' fees), causes, causes of action, lawsuits, judicial and quasi-judicial proceedings, judgments, asserted, alleged, initiated, commenced, and/or prosecuted by third parties arising from, relating to, or concerning Seller's enforcement against any such third party involving Seller's Reservation of Rights pursuant to Paragraphs 2.2 and 8.12. This indemnification is understood to include not only the scope of any and all such claims (as broadly and liberally interpreted and referenced in this Paragraph) asserted by such third parties, but also all reasonable attorneys' fees, costs and expenses, incurred by Buyer in defending against any such third party claim.

The undersigned have entered into this Agreement as of the date first written above.

BANKRUPTCY ESTATES OF ICHIBAN RECORDS, INC., ICHIBAN INTERNATIONAL CORPORATION, ICHIBAN PUBLISHING CORPORATION, ICHIBAN DISTRIBUTION, INC., and SKY RECORDS, INC.

By: _____ as trustee only

Leon S. Jones, in his capacity as Trustee for the Bankruptcy Estate of Ichiban Records, Inc., Ichiban International Corporation, Ichiban Publishing Corporation, Ichiban Distribution, Inc., and Sky Records, Inc. and not individually
Chapter 7 Case No: 99-66017-JB
Chapter 7 Case No: 99-70825-JB
Chapter 7 Case No: 00-75793-JB
Chapter 7 Case No: 00-75794-JB
Chapter 7 Case No: 00-75795-JB
1010

DM RECORDS, INC.

By: _____
        Mark Watson, President

10

Copyright Litigation
RYKO 0839
Confidential
Highly Sensitive

## EXHIBIT A
## EXECUTORY CONTRACTS

| | |
|---|---|
| Virgin France<br>11, place des Vosges<br>75004 Paris | License/Exec. Contract<br>Cure Amount: 0 |
| Taking Care of Business Music<br>18 Pindock Mews<br>London W9 2PY<br>United Kingdom | License/Exec. Contract<br>Cure Amount: 0 |
| Bobby Messano<br>C/o Republic Artist Management, Inc.<br>2919 Audubon Drive<br>Macon, Georgia 31204 | Recording Agreement<br>Cure Amount: 0 |
| New World Entertainment<br>C/o Heather M. Nelson<br>25 E. Washington Street<br>Suite 1206<br>Chicago, Illinois 60602 | P & D Agreement<br>Cure Amount: 0 |
| Top Authority<br>C/o Gregory J. Reed<br>1201 Bagley<br>Detroit, Michigan 48226 | Recording Agreement<br>Cure Amount: 0 |
| Monkey Hill Records<br>C/o Charles T. Driebe, Jr.<br>PO Box 975<br>Jonesboro, Georgia 30237 | Distribution Agreement<br>Cure Amount: $12,000.00 |
| Michael A. Crooms P/K/A<br>DJ Smurf<br>C/o Collipark Music Inc.<br>772 Pointe South Parkway<br>Jonesboro, Georgia 30238 | Recording Agreement<br>Cure Amount: 0 |
| Michael A Crooms (2nd Address)<br>2818 East Point Street<br>Suite 23<br>East Point, Georgia 30344 | Recording Contract<br>Cure Amount: 0 |

Copyright Litigation
RYKO 0840
Confidential
Highly Sensitive

Brajo Records
C/o Irene M. Guimera                      Cure Amount: 0
225 S. Sepulveda Boulevard
Suite 280
Manhattan Beach, California 90266-6865

Ed Strickland p/k/a Alexia                Recording Agreement
Alexia Records                            Cure Amount: 0
1257 Parkwood Chase NW
Acworth, Georgia 90102

A-Mack Records                            Recording Agreement
14th Street, Suite 716                    Cure Amount: 0
Oakland, CA 94612

Bass Cave Records                         Recording Agreement
230 East 27th Street                      Cure Amount: 0
Jacksonville, FL 33206

Bay Rider Entertainment                   Recording Agreement
C/o Brandon C. Rodegeb                    Cure Amount: 0
55 Springstowne Center
Suite 262
Valleys, CA 94591

Black Eye Records, Inc.                   Recording Agreement
1255 Belle Avenue                         Cure Amount: 0
Winter Springs, FL 32708

Bob Grady Records                         Recording Agreement
405 Edwards Street                        Cure Amount: Unknown
Calhoun, Georgia 30701

Brandon Records, Inc.                     Recording Agreement
713 S. 18th Street, Suite B               Cure Amount: 0
Philadelphia, PA 19146

Bullsitter Records                        Recording Agreement
C/o  Frank Dreyer                         Cure Amount: 0
366 Sterling Street
Atlanta, GA 30307

ColliPark Records                         Recording Agreement
135 Rockford Court                        Cure Amount: 0
College Park, GA 30349

Daniel Beard d/b/a DE Recs                Recording Agreement
432 Moreland Avenue, NE                   Cure Amount: 0
Atlanta, GA 30307

Copyright Litigation
RYKO 0841
Confidential
Highly Sensitive

Gracenote Records, Inc.                     Recording Agreement
1620 S. Main Street, Suite 125              Cure Amount: 0
Laurinburg, NC 28352

Green Bros Entertainment, Inc.              Recording Agreement
150 West 26th Street, Suite 602            Cure Amount: 0
New York, NY 10001

Green Bros Entertainment, Inc. (2nd Address)
13 Parkside Court                           Cure Amount: 0
Pomona, NY 10970

Hopsack and Silk Productions, Inc.         Recording Agreement
254 West 72nd Street, Suite 1A             Cure Amount: 0
New York, NY 10023

I.D. Records                               Recording Agreement
4648 N. Sacramento                         Cure Amount: 0
Chicago, IL 60625

Inner Soul Records, Inc.                   Recording Agreement
12600 Gulfway Drive                        Cure Amount: Unknown
Port Arthur, TX 77640

The Harvey Music Company                   Recording Agreement
d/b/a ISR Records                          Cure Amount: 0
4334 Carpenter Avenue
Bronx, NY 10466

Lickle Getto Boy                           Recording Agreement
$ers/n/cents Entertainment, Inc.          Cure Amount: 0
8211 Viney Ridge Drive
Houston, TX 77083

Move the Crowd Records, Inc.               Recording Agreement
P.O. Box 831822                            Cure Amount: 0
Stone Mountain, GA 30083

Me and Mine Entertainment                  Recording Agreement
C/o Tobin Costen                           Cure Amount: 0
655 Lewelling Blvd
Suite 412
San Leandro, CA 94579

Carlos Glover d/b/a Mirror Image           Recording Agreement
PO Box 42266                               Cure Amount: Unknown
Atlanta, GA 30311

Copyright Litigation
RYKO 0842
Confidential
Highly Sensitive

| | |
|---|---|
| The Publishing Mills<br>1680 N. Vine Street, Suite 1016<br>Los Angeles, CA 90028 | Recording Agreement<br>Cure Amount: 0 |
| Quad Platinum Records, Inc.<br>8582 Katy Freeway, Suite 220<br>Houston, TX 77024 | Recording Agreement<br>Cure Amount: Unknown |
| Risk Music Group, LLC<br>11908 Ventura Blvd, No. 201<br>Studio City, CA 91604 | Recording Agreement<br>Cure Amount: $70,000.00 |
| Get Funky Records, Inc.<br>C/o James G. Edwards, Inc., Suite 540<br>One West Court Square<br>Decatur, GA 30030 | Recording Agreement<br>Cure Amount: 0 |
| One World Entertainment Company, Limited<br>Nomis Studios<br>45-53 Sinclair Road<br>London W14 ONS | Recording Agreement<br>Cure Amount: 0 |
| Juanita Dailey<br>C/o Dave Wooley<br>PO Box 2084<br>Wilmington, DE 19899 | Recording Agreement<br>Cure Amount: 0 |
| Clarence Carter<br>3338 King Fisher Drive<br>Decatur, GA 30030 | Recording Agreement<br>Cure Amount: Unknown |
| Bad Boys of Bass<br>Royal Recordings<br>4630 S. Kirkman Road, #143<br>Orlando, FL 32811 | Recording Agreement<br>Cure Amount: 0 |
| Lisa Cerbone<br>C/o Ray McElfish<br>230 Park Avenue, Suite 951<br>New York, NY 10169 | Recording Agreement<br>Cure Amount: Unknown |
| Jimmy Dawkins<br>PO Box 12228<br>Chicago, IL 60612 | Recording Agreement<br>Cure Amount: 0 |
| Deadeye Dick<br>1280 Winchester Pkwy, Suite 245<br>Atlanta, GA 30080 | Recording Agreement<br>Cure Amount: 0 |

Copyright Litigation
RYKO 0843
Confidential
Highly Sensitive

Theodis Ealy
961 Bramwell Lane
Stone Mountain, GA 30083

Recording Agreement
Cure Amount: Unknown

Cleveland Fats
PO Box 1101
Ravenna, OH 44266

Recording Agreement
Cure Amount: Unknown

Cleveland Fats (2nd Address)
6368 Gladys Avenue
Ravenna, OH 44266

Fleshtones
504 East 5th Street, Suite 2D
New York, NY 10009

Recording Agreement
Cure Amount: Uknown

Vernon Garrett
739 Gallant Fox Drive
Dallas, TX 75221

Recording Agreement
Cure Amount: 0

Sandra Hall
5080 Springtree Court
Lithonia, GA 30038

Recording Agreement
Cure Amount: 0

Willie Hill
4402 Pacer Court
Stone Mountain, GA 30083

Recording Agreement
Cure Amount: Unknown

Little Mike
C/o Tom Hathaway
7392 Trade Street
San Diego, CA 92121

Recording Agreement
Cure Amount: 0

Billy Osborne/360 Degrees
121 Shelly Avenue
London E12 6PX

Recording Agreement
Cure Amount: 0

The Sharks
C/o Jennifer Wheeler
1225 Cameron Court, NE
Atlanta, GA 30306

Recording Agreement
Cure Amount: 0

Robert Harold Thompson
5166 Rainbow Drive
Charlotte, WV 25313

Recording Agreement
Cure Amount: 0

Copyright Litigation
RYKO 0844
Confidential
Highly Sensitive

| | |
|---|---|
| Success Records, Inc.<br>PO Box 817<br>Roswell, GA 30077 | Recording Agreement<br>Cure Amount: 0 |
| Ultrax Records<br>2412 Piedra Drive<br>Plano, TX 75023 | Recording Agreement<br>Cure Amount: $120,000.00 |
| Live Shot Records<br>665 NW 118th Street<br>Miami, FL 33168 | Recording Agreement<br>Cure Amount: 0 |
| VAC, Inc.<br>1781 Lynn Lane<br>Decatur, GA 30032 | Recording Agreement<br>Cure Amount: 0 |
| Unfadable Records<br>C/o Eatmon Music<br>5042 Wilshire Blvd, Suite 520<br>Los Angeles, CA 90036 | Recording Agreement<br>Cure Amount: 0 |
| Warrior Records<br>6367 Selma Avenue<br>Hollywood, CA 90028 | Recording Agreement<br>Cure Amount: 0 |
| Willis Entertainment Group, Inc.<br>350 Warren Street, Suite 100W<br>Jersey City, NJ 07302 | Recording Agreement<br>Cure Amount: 0 |
| Wooley Entertainment, Inc.<br>T/A Woo Records<br>PO Box 2084<br>Wilmington, DE 19899 | Recording Agreement<br>Cure Amount: 0 |
| Gotham Records, Inc.<br>1841 Broadway, Suite 1012<br>New York, NY 10023 | Recording Agreement<br>Cure Amount: 0 |
| Chump Change Records<br>1030 Clarendon Crescent<br>Oakland, CA 94610 | Recording Agreement<br>Cure Amount: 0 |
| Global Teamwork, LLC<br>1776 Peachtree Street<br>Suite 356-Bridge<br>Atlanta, GA 30309 | Recording Agreement<br>Cure Amount: 0 |

Copyright Litigation
RYKO 0845
Confidential
Highly Sensitive

CGA, Inc.
14950 N. 83rd Pl
Scottsdale, AZ 85260

Recording Agreement
Cure Amount: 0

B-Town Records
1516 Rogers Street
New Iberia, LA 70560

Recording Agreement
Cure Amount: 0

Big Homie Wreck-Hits, Inc.
17 S.E. 32nd Street
Oklahoma, OK 73129

Recording Agreement
Cure Amount: 0

Big Taz Productions
1328 Baywood Glen
Lithonia, GA 30058

Recording Agreement
Cure Amount: 0

Ground Zero Entertainment
2787 McDonough Road
Hampton, GA 30228

Recording Agreement
Cure Amount: 0

Deongelo M. Holmes (D-Roc)
2121 Cherry Lane
Decatur, GA 30032

Recording Agreement
Cure Amount: Unknown

Oscar Toney, Jr.
2908 Birmingham Hwy, Apt. 110
Opelika, AL 36801

Recording Agreement
Cure Amount: Unknown

Freemasonry
2068 Stockbridge Road
Jonesboro, GA 30236

Recording Agreement
Cure Amount: Unknown

Stephen Spence
Kid Sensation
706 S 32nd Street
Renton, WA 98055

Recording Agreement
Cure Amount: Unknown

Leonard Thomas Williams
Dicky Williams
2550 Glenwood Avenue, Apt. A
Raleigh, NC 27608

Recording Agreement
Cure Amount: 0

Don Bables
Don Diego
708 Summitt Creek Drive
Stone Mountain, GA 30083

Recording Agreement
Cure Amount: Unknown

Copyright Litigation
RYKO 0846
Confidential
Highly Sensitive

Future Productions
Tyrone Davis/Leo Graham
124 Twin Oaks Drive
Oak Brook, IL 60521

Recording Agreement
Cure Amount: Unknown

Simon McNeil
"Lil Mac"
3286 Sweet Springs Drive
Memphis, TN 38128

Recording Agreement
Cure Amount: Unknown

Don Hughes
"D.J. Trick"
104 Cornell Street
Gadsden, TN 32337

Recording Agreement
Cure Amount: Unknown

Marion Jackson/Wanda Gipson
UNLV
24 W. Biscyane
Memphis, TN 38109

Recording Agreement
Cure Amount: Unknown

E.C.P.
Mike Porter and Bruce Spence
706 S. 32nd Street
Renton, WA 98055

Recording Agreement
Cure Amount: Unknown

Sunmaster Productions, Inc.
10004 NE 122nd Street, Spt. TD
Kirkland, WA 98034

Recording Agreement
Cure Amount: Unknown

Dawgman Entertainment
Da Nasty Pappys
5008 Londonderry Ct.
Orlando, Florida 32808

Recording Agreement
Cure Amount: Unknown

Copyright Litigation
RYKO 0847
Confidential
Highly Sensitive