UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TVT MUSIC, INC.                                    )
                                                   )
                          Plaintiff,               )   Civil Action No.
                                                   )   05 CV 5602 (JGK) (KNF)
            -against-                              )
                                                   )
REP SALES, INC., d/b/a RYKO DISTRIBUTION           )
PARTNERS and DM RECORDS, INC. d/b/a                )
ICHIBAN RECORDS and/or CRITIQUE                    )
RECORDS,                                           )
                                                   )
                          Defendants.              )
------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036-8299
(212) 969-3000

HALL, BOOTH, SMITH & SLOVER, PC.
611 Commerce Street, Suite 3000
Nashville, TN 37203
(615) 313-9913

*Attorneys for Defendants Rep Sales, Inc.
d/b/a RYKO Distribution Partners and DM
Records, Inc.*

## PRELIMINARY STATEMENT

Defendant DM Records, Inc. ("DM"), a small, family-owned and operated independent record label in south Florida, purchased the assets of Ichiban Records, Inc. ("Ichiban") out of bankruptcy in 2001. Included in those assets were various sound recordings, compositions, distribution agreements and artist agreements among other things. Included in the purchased assets were the albums Lil Jon and the East Side Boyz ("Lil Jon"): *Get Crunk Who U Wit da Album* and D.J. Smurf: *Dead Crunk* on which Lil Jon also appeared. Also included in the assets were several artist and distribution agreements conveying the rights to the material embodied on the two (2) albums as well as the right to use the artists' names and likenesses on subsequent re-releases. It was pursuant to this acquisition of rights, coupled with the acquisition of additional rights, that Defendant, DM Records, Inc. ("DM"), released the album *Certified Crunk da Remix*[1] which embodied remixes of tracks previously released on *Get Crunk Who U Wit da Album* and *Dead Crunk*.

In August of 2003, DM entered into an agreement with Carlos Glover d/b/a Mirror Image Records ("Glover")[2] pursuant to which all the tracks embodied on *Certified Crunk da Remix* and the subsequent albums at issue in this lawsuit were created.[3] As the copyright holder, Glover had unfettered rights to create new tracks and remixes of the compositions at issue, including new

---

[1] To help accurately portray exactly what was embodied on the album *Certified Crunk da Remix*, DM included "da Remix" in the title signifying both that it was, in fact, a remix album and also that it embodied remix tracks from the previous Ichiban title which included the words "da Album."

[2] Glover was Lil Jon's original and first record label which had an exclusive distribution agreement with Ichiban pursuant to which *Get Crunk Who U Wit da Album*, Lil Jon's first album ever, was released and distributed. The agreement was included in the Ichiban assets.

[3] It is undisputed in this action that Glover was the copyright owner of, or had acquired the appropriate rights for, all compositions at issue. Glover had entered into an exclusive distribution agreement with DM in 2001 pursuant to which *Get Crunk Who U Wit da Album* was re-released without any objection by the Plaintiff. This agreement specifically placed the burden of obtaining all necessary mechanical licenses on Glover and prohibited Glover from transferring any of his rights without the express, written consent of DM.

derivative works.[4] DM paid Glover an advance as well as paid his expenses, and the expenses of the producers he selected for the project, to travel to DM's studio in Florida and produce the project. Glover's hotel expenses were also paid by DM during the time he participated in the project. All of the tracks at issue were created with Glover's participation and approval.

In 2003, Plaintiff sued Defendants for unfair competition and other trademark and Lanham Act claims (the "Trademark Action").[5] Subsequently, Plaintiff clandestinely entered into an agreement with Glover in 2005 for the rights to administer his rights in the subject compositions for purposes of bringing a second lawsuit against Defendants for copyright infringement. Prior to that time, there had been no registrations of the subject compositions with the U.S. Copyright Office. DM diligently checked the Copyright Office records periodically and filed Notices of Intent to Obtain Compulsory Licenses out of an abundance of caution in case other composers existed of which DM was not aware. Immediately upon discovering Plaintiff's copyright registrations, DM began accounting to, and paying, Plaintiff compulsory license fees also out of an abundance of caution. In spite of all of DM's good faith efforts to secure rights and comply with copyright law, Plaintiff still sued Defendants a second time.

To date, the record has been completely devoid of any evidence that Plaintiff has been harmed in any manner. Plaintiff's releases of Lil Jon and Ying Yang Twins albums have sold millions of copies before and after the Defendants' releases which barely eclipsed one hundred thousand (100,000) units. In fact, the sales of Plaintiff's Lil Jon 2003 remix album *Part II* actually **increased** following the release of *Certified Crunk da Album*. Very simply, this lawsuit and the

---

[4] Defendants specifically deny that derivative works of the compositions were created. Pursuant to the Ichiban agreements, DM had unfettered rights to create remixes and derivative works of the sound recordings ay issue.

[5] Plaintiff dismissed all but the false advertising claim to avoid having to produce financial records with the mistaken impression that false advertising did not require proof of injury.

companion Trademark Action are spiteful actions by a litigious company[6] and individual directed at a small independent record company that was attempting to conduct business in good faith.

## ARGUMENT

### I. DEFENDANTS HAVE CLEARLY COMPLIED WITH LOCAL RULE 56.1

TVT attempts to confuse the important issues in this case by groundlessly contending that Defendants failed to fully comply with Local Rule 56.1. (See, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 8-9). The two "facts" specifically cited by Plaintiff in this regard are **not** undisputed facts and are irrelevant to Defendants' Motion for Summary Judgment. Defendants are entitled to judgment as a matter of law regardless of any ownership interests purportedly acquired by TVT from Lil Jon and despite any remixing of the compositions at issue.[7] In an effort to fully apprise the Court of the issues, however, Defendants diligently anticipated Plaintiff's argument in this regard in their initial brief and submitted the expert report of Elizabeth Marlowe alternatively refuting it.

In addition, Plaintiff's case law offers no support for their assertions that Defendants failed to comply with Local Rule 56.1. Searight v. Doherty Enterprises, Inc., involved a plaintiff who simply submitted an affidavit from herself which described several attached documents. 02-CV-0604

---

[6] TVT is the largest independent record label in the United States and has been involved in many lawsuits both as plaintiff and defendant.

[7] Plaintiff contends that "Defendants side-step glaring factual issues by simply ignoring them in its 56.1 Statement, including the facts that Plaintiff obtained ownership interests in the Compositions from Jonathon Smith as well as Carlos Glover, and the fact that defendants' uses of the Compositions include substantial alterations." Defendants deny "substantial alterations" but, as set forth in their initial brief, since the remixes were created by the copyright owner **any** alterations were permissible. Likewise any rights purportedly acquired by TVT from Jonathon Smith are irrelevant. Important to note in this regard is the fact that Plaintiff purportedly acquired the alleged rights from Smith in May of 2001 but did not register the subject compositions with the Copyright Office, or sue the Defendants, until Plaintiff attempted to secure rights from Carlos Glover four (4) years later. **There were no registered copyright owners for the subject compositions in the Copyright Office records at all until a full year and a half after Defendants' release and distribution of the subject recordings.** Every composition at issue has been in publication for more than nine (9) years and has been an un-registered copyright for at least the first six (6) years. (See, Affidavit of Mark Watson dated January 12, 2007, ¶¶ 10-11, Ex. YY). TVT should be estopped from so belatedly asserting the purported and fatally defective "rights."

(SJF)(JO), 2005 U.S. Dist. LEXIS 42681 at *3 (E.D.N.Y. Sept. 25, 2005). **The movant did not submit any semblance of a 56.1 statement.** Id. The Plaintiff's next cited case, Tsai v. the Rockefeller University, only addresses 56.1 Statements in one small footnote. No. 00 Civ. 329 (SAS), 2002 U.S. Dist. LEXIS 2552 at *2, n. 1 (S.D.N.Y. Feb. 15, 2002). Additionally, Tsai addresses a plaintiff's **response** to a defendant's 56.1 Statement. The plaintiff's statement contained **long narratives with no supporting evidence.** Id.[8] Lastly, Frank v. Plaza Constr. Corp. is inapplicable because the case involved a defendant **who did not dispute the plaintiff's claim** in their 56.1 Statement. 186 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). Defendants submitted a complete and concise 56.1 Statement in accordance with the Local Rules containing succinct, numbered, and supported statements refuting TVT's claims and, as such, TVT's argument in this regard is merely a distracting red herring.

II.   **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW**

A.   **Plaintiff Does Not Own Valid and Subsisting Copyright Interests in the Compositions and, Even Assuming *Arguendo* that Any Rights Exist Which Defendants Deny, Plaintiff Should be Equitably Estopped from Asserting any Such Purported Rights.**

As set forth and supported in Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def.s' Resp. Memo"), and in Defendants' Response to Plaintiff's

---

[8] Notably in this regard, Plaintiff's response to Defendants' 56.1 Statement contained statements which were supported only by references to entire depositions without individual page numbers and line references or no references at all. (See, Statements 18, 19 and 22 of Plaintiff's Response). Plaintiff also relies heavily on the statements and argument of counsel submitted in the form of conclusory Declarations. Therefore, pursuant to the standard urged by Plaintiff, its response to Defendants' 56.1 Statement lacks evidentiary support and, as such, should be deemed insufficient to oppose Defendants' motion. Additionally, a plain reading of Plaintiff's Statement of Additional Material Facts would support denial of Plaintiff's Motion for Summary Judgment. Plaintiff's introductory paragraph states, "Pursuant to Local Rule 56.1(b), Plaintiff's contend that there are genuine issues of material fact as to the following additional facts not contained in Defendants' Statement..." Statement four (4) and other statements which follow Plaintiff's contention that genuine issues of material fact exist thereto are the Plaintiff's allegations that it owns and controls the subject compositions! According to Plaintiff's 56.1 statement, genuine issues of material fact exist as to some or all of the contentions upon which it relies in support of its Motion for Summary Judgment!

Additional Material Facts ("Def.s' Resp. to Facts"), Defendants' **do dispute** that Plaintiff holds valid copyright interests and/or copyright certificates. Additionally, Defendants dispute that Lil Jon is an author to the extent that Defendants have not been able to dispose him despite numerous efforts to serve subpoenas on him.[9] Plaintiff admitted in its Statement of Facts that the compositions were first published in 1997 and 1998 at the latest. Thus, Plaintiff's registration of the copyrights were in excess of seven years following first publication of the works, as well as four (4) years following Plaintiff's first alleged assignment of a copyright interest therein.[10] Plaintiff's specious argument that this court should accept its certificates of registration as *prima facie* evidence of the validity of its ownership certainly begs the question of why the Plaintiff did not register its purported ownership when it entered into the agreement with Jonathan Smith p/k/a Lil Jon ("Smith" or "Lil Jon") dated May 30, 2001. Instead, Plaintiff sat on its purported rights for four (4) years during which time Defendants re-released the *Get Crunk Who U Wit da Album* with no objection at all from Plaintiff. As such, Plaintiff should be equitably estopped from asserting the purported rights at this time.[11]

Plaintiff tellingly only devotes two (2) sentences to its purported agreement with Glover which was *void ab initio*. Plaintiff alleges that Defendants have not cited to supporting legal

---

[9] Tellingly, Plaintiff refused to assist Defendants in either serving or obtaining Lil Jon's deposition testimony in spite of the fact that Lil Jon is TVT's biggest selling artist. Lil Jon has **never** objected to Defendants' releases nor has he even contacted Defendants regarding same. It has been common knowledge in the industry, and Lil Jon has made it know in the press, that he has not been treated fairly by TVT.

[10] Plaintiff cites an agreement dated May 30, 2001 between it and Smith as support for its claim of copyright ownership. The rights purportedly transferred to TVT by Smith at that time were defective. The termination agreement relied upon by Smith for those rights was entered into between Smith and Glover during the pendency of the Ichiban Bankruptcy stay and was never approved by the Bankruptcy Trustee and/or Bankruptcy Court. As such, the termination agreement was invalid.

[11] To save the Court from redundancy, Defendants direct the Court's attention to pages 7 and 8 of Def.'s Resp. Memo for analysis and support refuting Plaintiff's claims regarding 17 U.S.C. § 410, and Plaintiff's mischaracterization of the information provided by DM on the Notices Of Intent To Obtain Compulsory Licenses.

authority. As set forth in Def.'s Resp. Memo however, there is an implied covenant of good faith by the grantor of rights under a copyright.[12]

Mr. Glover clearly entered into an agreement with DM whereby he would participate in the production of new remixes which would subsequently be "produced, manufactured, distributed, marketed, sold and promoted" by DM who, in turn, agreed to pay Carlos Glover as a "participant" a percentage of the gross profit realized from the sales of the recordings. Additionally, DM paid Mr. Glover a considerable amount of money initially in the form of an advance. As such, an implied covenant of good faith and fair dealing gave rise to an implied negative covenant binding Mr. Glover and forbidding Mr. Glover from doing anything or permitting any use of any rights that he purportedly reserved in the works in a manner that might destroy the benefits otherwise to inure to DM. He was forbidden by the implied covenant of good faith to refrain from doing anything which would have the effect of destroying or injuring the right of DM to receive the fruits of the contract, namely, DM's ability to produce, manufacture, distribute, market, sell and promote the newly remixed tracks. Paragraph fourteen (14) of the exclusive distribution agreement forbade either party from assigning any portion of the agreement without the written consent of the other party. DM never so consented.

---

[12] "It has been held that in every contract whereby rights under a copyright are transferred or licensed, 'there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract, there exists an implied covenant of good faith and fair dealing.' This principle has been invoked with particular reference to the obligations of the grantor in connection with a partial assignment or license of limited rights under the copyright. That is, the implied covenant of good faith and fair dealing is said to give rise to an implied negative covenant binding upon the grantor that he will not permit use of any of the rights that he has reserved in the work in a manner that might destroy the benefits otherwise to inure in the licensee." 2 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 10.11 [A](2006) citing Kirke La Shell Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163 (1933); Uproar Co. v. National Broadcasting Co., 81 F.2d 373 (1st Cir. 1966).

B. **Carlos Glover Materially Participated in the Creation of all Remixes at Issue, Defendants Owned or Acquired All Necessary Rights to Create and Release the Remixes at Issue and No Infringement Has Occurred as a Matter of Law.**

Plaintiff fails entirely to address the most obvious reason why Defendants are entitled to summary judgment, namely that **all** the remixes at issue were created, prepared, supervised and produced by the undisputed copyright owner at the time of their creation, Carlos Glover! Instead, Plaintiff simply ignores the argument and devotes almost eight (8) pages of its Response Brief to what the August 2003 agreement between Glover and DM conveyed to DM and the incorrect assertion that DM **alone** prepared, produced and distributed the subject remixes. As is clearly established by the affidavits of Mark Watson, David Watson and Joe Corcoran (Def.'s Ex.'s R, S, YY and T respectively) and **entirely uncontroverted** by any deposition testimony, affidavit testimony or declaration testimony, Glover materially participated in the creation and production of **all** the remixes at issue in this lawsuit.[13] It is well-established copyright law that an owner of a copyright has an unfettered right to create derivative works. Plaintiff does not dispute that Glover was the copyright owner, nor does Plaintiff dispute that he materially participated in the creation of the remixes at issue. As such, Defendants are entitled to judgment as a matter of law that no infringement has occurred. The Court can grant Defendants' Motion for Summary Judgment on that fact **alone**. Plaintiff's Response Brief is completely devoid of any response to Defendants' assertions in this regard on pages seventeen and eighteen of their Summary Judgment Memorandum of Law, Section II, B. There is no contradictory evidence and thus no genuine issue of fact to be tried in this regard. The undisputed copyright owner prepared the works at issue, was paid an advance for preparing them, has been accounted to for royalties generated thereby and there is no evidence to the contrary. Simply put, all other issues raised by Plaintiff are irrelevant, immaterial and merely

---

[13] Beginning on page 17 of Defendants' Memorandum of Law in Support of their Motion for Summary Judgment is an exhaustive discussion of the facts and law in this regard.

8

distractions and red herrings. Defendants respectfully are entitled to judgment as a matter of law and attorneys fees and costs pursuant to 17 U.S.C. ¶ 505.

Plaintiff spends an inordinate amount of argument attempting to misconstrue the August 2003 agreement between DM and Glover and the rights transferred pursuant thereto. Defendants have briefed the arguments in this regard in their previous submissions but Plaintiff asserts on pages fourteen (14) and fifteen (15) that DM's seeking to obtain separate mechanical license rates for two (2) additional tracks not included in the August 2003 agreement is proof that Glover did not intend to transfer rights in the compositions. Quite to the contrary, the fact that DM sought separate mechanical license rates for **just** those two (2) compositions **not covered** by the August 2003 agreement bolsters DM's contention that the August 2003 agreement did include a transfer of rights in the compositions. DM did not seek mechanical licenses for any of the other compositions because they were clearly covered by the August 2003 agreement. Glover's refusal to sign the long form was for reasons other than the mechanical license issues as evidenced by his e-mails which admitted that **everything** was to be split between DM and Glover **equally**. It would be a breach of Glover's contractual obligation and duty of good faith to now assert that he did not intend to transfer rights in the underlying compositions after accepting an advance to create them expressly for manufacturing, promotion, marketing and distribution (all of which would be impossible if he did not transfer rights in the underlying compositions) as set forth in the August 2003 Deal Memo.

To save the Court from unnecessary redundancy and repetition of argument and citation of authority, Defendants direct the Court's attention to their memoranda of law both in support of their motion for summary judgment and in response to Plaintiff's motion for summary judgment (as well as their responses to Plaintiff's Statements of Facts) with regard to Plaintiff's allegations concerning (a) the August 2003 agreement between DM and Glover; (b) the arguments and allegations related to

9

Lawrence Ferrara's analysis and Elizabeth Marlowe's analysis; (c) compulsory licenses obtained by DM out of an abundance of caution for the lengthy period that the compositions remained unregistered; and (d) the absence of any liability on the part of Defendant Rep Sales which distributed the albums at issue pursuant to an exclusive distribution agreement with DM.[14]

## CONCLUSION

In conclusion, this Court can **deny** Plaintiff's Motion for Summary Judgment and **grant** Defendants Motion for Summary Judgment based upon all of the above but most specifically because it is wholly undisputed that the copyright owner, Carlos Glover materially participated in, produced, prepared, supervised and created all the remixes at issue in this action and, as the copyright owner, could make any changes or alterations to the compositions that he desired. As such, Defendants are entitled to judgment as a matter of law and attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**HALL, BOOTH, SMITH & SLOVER, PC.**

By: /s/ Karl M. Braun
    Karl M. Braun, *pro hac vice* 6/8/04
    BPR #022371
    611 Commerce Street
    The Tower, Suite 3000
    Nashville, TN 37203

**PROSKAUER ROSE LLP**
    Jenifer deWolf Paine (Bar No.: JP 9393)
    1585 Broadway
    New York, New York 10036-8299

    *Attorneys for Defendants Rep Sales, Inc.*
    *d/b/a RYKO Distribution Partners and DM*
    *Records, Inc.*

---

[14] DM has been indemnifying Rep Sales in this action.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on February 5, 2007, I caused to be served a copy of Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment on counsel for plaintiffs, by electronic notification and overnight delivery, as follows:

Brian D. Caplan, Esq.
Jonathan J. Ross, Esq.
LABATON RUDOFF & SUCHAROW, LLP
100 Park Avenue
New York, New York  10017
Fax: 212.818.0477

By: /s/ Karl M. Braun
Karl M. Braun, *pro hac vice* 6/8/04